106 P.3d 364

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Warren VELLINA, Jr., Defendant–Appellant.**

No. 26288.

Supreme Court of Hawai'i.

Feb. 14, 2005.

Arleen Y. Watanabe, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

James S. Tabe, Deputy Public Defender, on the briefs, for the defendant-appellant Warren Vellina, Jr.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

■ The defendant-appellant Warren Vellina, Jr. appeals from the judgment of the circuit court of the second circuit, the Honorable Shackley F. Raffeto presiding, filed on November 19, 2003, convicting him of and sentencing him for the following offenses: (1) burglary in the first degree, in violation of Hawai'i Revised Statutes (HRS) § 708–810(1)(c) (1993);[1] (2) two counts of theft in the first degree, in violation of HRS § 708–830.5(1)(b) (1993);[2] and (3) theft in the second degree, in violation of HRS § 708–831(1)(b) (1993 & Supp.2003).[3] On appeal, Vellina contends: (1) that the circuit court erred in imposing mandatory minimum terms of imprisonment, pursuant to HRS §§ 706–660.1(1)(c) and 706–660.1(3)(c) (1993),[4] in connection with his convictions of the two counts of first-degree theft of a firearm, pursuant to HRS § 708–830.5(1)(b), as evidenced by (a) the statute's plain language, (b) the legislative history underlying HRS § 706–660.1, (c) an *in pari materia* reading of HRS §§ 706–660.1 and 708–830.5, and (d) the "rule of

---

1. HRS § 708–810(1)(c) provides:

    A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
    . . . .
    (c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

2. HRS § 708–830.5(1)(b) provides that "[a] person commits the offense of theft in the first degree if the person commits theft . . . [o]f a firearm[.] . . . Theft in the first degree is a class B felony."

3. HRS § 708–831(1)(b) provides that "[a] person commits the offense of theft in the second degree if the person commits theft . . . of property or services the value of which exceeds $300[.]"

4. HRS § 706–660.1 provides in relevant part:

    **Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony.** (1) A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:
    . . . .
    (c) For a class B felony—up to five years;
    . . . .
    (3) A person convicted of a felony, where the person had a semiautomatic firearm or automatic firearm in the person's possession or used or threatened its use while engaged in the commission of the felony, whether the semiautomatic firearm or automatic firearm was loaded or not, and whether operable or not, shall in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:

lenity"; [5] and (2) that the circuit court plainly erred by improperly sentencing him to a consecutive term of imprisonment based upon an unsubstantiated allegation of misconduct.

For the reasons discussed *infra*, we hold that the circuit court erred in sentencing Vellina to mandatory terms of imprisonment, pursuant to HRS § 706–660.1, in connection with his convictions of two counts of first-degree theft of a firearm. We further hold that the circuit court plainly erred in imposing a consecutive sentence based upon Vellina's alleged but uncharged misconduct.

### I. BACKGROUND

On July 28, 2003, a Maui grand jury returned an indictment against Vellina charging him with the following offenses: (1) burglary in the first degree (Count II), in violation of Hawai'i Revised Statutes (HRS) § 708–810(1)(c), *see supra* note 1; (2) theft in the first degree (Counts III and IV), in violation of HRS § 708–830.5(1)(b), *see supra* note 2; and (3) theft in the second degree (Count V), in violation of HRS § 708–831(1)(b), *see supra* note 3.

On October 6, 2003, the State of Hawai'i [hereinafter, "the prosecution"] filed a motion for imposition of mandatory minimum terms of imprisonment. The prosecution sought a mandatory minimum term of imprisonment of five years as to Count III, pursuant to HRS § 706–660.1(1)(c),[6] and a mandatory minimum term of imprisonment of ten years as to Count IV, pursuant to HRS § 706–660.1(3)(c).

On October 9, 2003, Vellina entered a plea of no contest to all four charges against him.[7]

On November 18, 2003, the circuit court conducted a hearing on the prosecution's motion for mandatory minimum terms of imprisonment and sentencing. Vellina objected to the prosecution's motion for mandatory minimum terms of imprisonment on the basis that it was required to show "whether he used or possessed [a rifle and semi-automatic rifle] during the commission of another crime[.]" After entertaining arguments from both parties, the circuit court granted the prosecution's motion and orally ruled as follows:

> [T]he indictment in this case did specifically put him on notice that the use or possession of a firearm in this case, Count 3, was a rifle, and Count 4 was a semi-automatic rifle.
>
> And, also, he knew it before he changed his plea, because the motion had in fact been filed and was pending at the time he changed his plea. And that fact was brought up at the time of his change of plea, and he was specifically put on notice that he was facing up to 70 years in extended terms of imprisonment.
>
> The court finds that there is no need for an independent finding by the court concerning the rifle and the semi-automatic rifle. But in any case, if that was needed, I could make that and will make it based on the fact that he pleaded no contest to the indictment, which specifically alleges those types of weapons in Count[s] 3 and 4.
>
> Now, *Garringer[ v. State*, 80 Hawai'i 327, 909 P.2d 1142 (1996),] held that the enhanced sentencing under [HRS § ] 706–660[.1] was not applicable to accomplice liability. The court there appeared to read the statute rather narrowly. And the de-

---

*State v. Haugen*, 104 Hawai'i 71, 75 n. 6, 85 P.3d 178, 182 n. 6 (2004).

**5.** This court has recognized that "[a]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *State v. Sakamoto*, 101 Hawai'i 409, 413 n. 3, 70 P.3d 635, 639 n. 3 (2003) (internal citations and quotation signals omitted). This "policy of lenity means that the [c]ourt will not interpret a [state] criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended." *Id.* (internal citations and quotation signals omitted) (some brackets added and some in original).

**6.** We note that the prosecution's motion erroneously cited HRS § 706–660.1(1)*(b)* in connection with Count III. Nevertheless, the correct citation is to HRS § 706–660.1*(c)*, *see supra* note 4, inasmuch as theft in the first degree, HRS § 708–830.5, *see supra* note 2, is a class B felony.

**7.** Other than its apparent prescience, the record is silent as to why the prosecution filed its motion for the imposition of mandatory minimum prison terms three days before Vellina entered his no contest pleas.

---

    ....
    (c) For a class B felony—ten years[.]

fense is making a similar argument, that the enhancement statute shouldn't apply where the gun itself was not used to commit—or was possessed for the purpose of committing the offense.

And I see the logic of the argument; however, I have to, I think, read the statute in its plain meaning, and it does state specifically that it applies where there is possession of a weapon in the commission of a felony.

So I don't think that I could extend that holding in *Garringer* to cover this situation, so I'm going to find that the statute does apply and grant the motion.

The prosecution then requested that the circuit court sentence Vellina to consecutive terms of imprisonment:

Mr. Vellina was sentenced six weeks ago for the rash of burglaries in the Waiehu terrace area. All the orange dots are all the houses that [Vellina] burglarized in the Waiehu Terrace are (indicating). Th[ere] the court did sentence [Vellina] to essentially a 20–year prison term, ten years consecutive to ten years on those matters.

. . . .

Now what the [prosecution] is seeking is a consecutive ten-year prison term to the 20–year prison term that you did impose back on September 23rd. I know the court has granted my motion for a mandatory minimum of ten years out of ten years, and that this would be a very strong sentence, giving this defendant now a 30–year prison term with a mandatory minimum of ten years.

. . . .

But more importantly, this burglary is different than the rash of burglaries in the Waiehu Terrace area for what [Vellina] stole this time. What [Vellina] stole this time, as the court knows, is two firearms, one being a very dangerous semi-automatic rifle.

*And what [Vellina] did with those firearms is the reason he deserves a consecutive ten-year prison term. [Vellina] sold those firearms to a drug dealer for drugs. So now what we have is a drug dealer in this community armed with a semi-automatic rifle that this defendant stole.*

THE COURT: The weapons were never recovered?

[Deputy Prosecuting Attorney (DPA)]: One weapon was recovered, Judge. The semi-automatic rifle was never recovered. The bolt-action rifle was recovered by the victim of the crime.

So then what you have here is police officers in this community, citizens in this community, living their lives, doing their jobs, knowing that there is one more gun out there in another drug dealer's hands, and that's because of [Vellina].

. . . .

[Vellina]: . . . . I was very scared, and I'm just asking you please not to run it consecutive. Run it concurrent to my prior sentences.

THE COURT: *Stealing a semi-automatic rifle and selling it to a drug dealer is—*

[Vellina]: *I didn't sell it.*

THE COURT: *You traded it for drugs?*

[Vellina]: *No.*

THE COURT: Well—

[Vellina]: Your honor, I[am] just looking at a lot of time right now, and I want to have a future out there with my family. I don't want to spend my life in prison. So please give me a chance. I'm asking.

THE COURT: All right. Thank you.

Well, I must say you've had lots of chances, and done a lot of damage in the community. *Now, when I hear that you've—some drug dealer now has a semi-automatic—an illegal semi-automatic weapon that you stole and transferred to him, I mean, that's pretty damaging to the community.* Do you realize that?

[Vellina]: Yes, I do.

(Emphases added.)

The circuit court sentenced Vellina to the following: (1) an indeterminate ten-year maximum term of imprisonment in connection with Count II; (2) an indeterminate ten-year maximum term of imprisonment, subject to a five-year mandatory minimum term, in connection with Count III; (3) an indeterminate ten-year maximum term of imprison-

ment, subject to a five-year mandatory minimum term, in connection with Count IV; and (4) an indeterminate five-year maximum term of imprisonment in connection with Count V. The circuit court ordered "Counts 3, 4 and 5 to run concurrently and consecutive to Count 2 for a total of twenty (20) years. Count 2 to run consecutive to the consecutive term imposed in Cr. Nos. 02–1–0171(2) and 02–1–0271(2) for a total of thirty (30) years."

On December 17, 2003, Vellina timely filed a notice of appeal. On December 10, 2004, the circuit court certified that no presentence investigation report was ever prepared in connection with the present matter.

## II. *STANDARDS OF REVIEW*

### A. *Sentencing*

■ [A] sentencing judge generally has broad discretion in imposing a sentence. *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Valera,* 74 Haw. 424, 435, 848 P.2d 376, 381 ... (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184; *State v. Kumukau,* 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); *State v. Murray* [,] 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 16 (1979).

*Keawe v. State,* 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Fry,* 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Keawe,* 79 Hawai'i at 284, 901 P.2d at 484 (quoting *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184

(quoting *Kumukau,* 71 Haw. at 227–28, 787 P.2d at 688)).

*State v. Kaua,* 102 Hawai'i 1, 7, 72 P.3d 473, 479 (2003) (quoting *State v. Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000)) (brackets and ellipsis points in original).

### B. *Questions Of Constitutional Law*

■ "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,' " and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations omitted).

*Kaua,* 102 Hawai'i at 7, 72 P.3d at 479 (quoting *State v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001)).

### C. *Statutory Interpretation*

■ "[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994)....

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertain-

ty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

> *Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2)(1993). "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Kaua,* 102 Hawai'i at 7–8, 72 P.3d at 479–480 (quoting *Rauch,* 94 Hawai'i at 322–23, 13 P.3d at 331–32(quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit,* 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker,* 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))))).

D. *Plain Error*

■ " 'We may recognize plain error when the error committed affects substantial rights of the defendant.' " *State v. Cordeiro,* 99 Hawai'i 390, 405, 56 P.3d 692, 707, *reconsideration denied,* 100 Hawai'i 14, 58 P.3d 72 (2002) (quoting *State v. Jenkins,* 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000) (quoting *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997))). *See also* [Hawai'i Rules of Penal Procedure] HRPP Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed

although they were not brought to the attention of the court.").

*State v. Hauge,* 103 Hawai'i 38, 48, 79 P.3d 131, 141 (2003) (quoting *State v. Matias,* 102 Hawai'i 300, 304, 75 P.3d 1191, 1195 (2003)).

## III. DISCUSSION

A. *The Circuit Court Erred In Imposing Mandatory Minimum Terms Of Imprisonment In Connection With Counts III And IV Given The Plain Language Of HRS § 706–660.1.*

■ Vellina argues that the circuit court did not have the legal authority to impose mandatory minimum terms of imprisonment in connection with Counts III and IV, given the plain and unambiguous language of HRS § 706–660.1 and when read *in pari materia* with HRS § 708–830.5(1)(b). Vellina maintains that his conduct could not trigger mandatory minimum terms of imprisonment, inasmuch as he did not "possess, use, or threaten to use a firearm or a semi-automatic firearm when he engaged in the commission of the offense of theft of a firearm." We agree with Vellina.

■ We have observed that " '[i]t is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning." *Haugen,* 104 Hawai'i at 75, 85 P.3d at 182 (citations omitted).

HRS § 706–660.1 is entitled "[s]entence of imprisonment for *use* of a firearm, semi-automatic firearm, or automatic firearm in a felony." (Emphasis added.) *See supra* note 4. For the circuit court to have imposed a legitimate mandatory minimum term of imprisonment, Vellina must have (1) been convicted of a felony (2) where he had a firearm or a semi-automatic firearm (a) in his possession (b) or used (c) or threatened its use while engaged in the commission of the felony. Nevertheless, Vellina was convicted of two counts of first-degree theft of a firearm, the felonious conduct being the theft of the firearms themselves. Accordingly, Vellina

did not possess, use, or threaten the use of a firearm while engaged in the *commission* of the felonies of theft of a firearm and a semi-automatic firearm. Vellina's theft of a firearm *was* the entire felony; in other words, there was no underlying felony that Vellina committed while possessing or using a firearm. As such, Vellina's conduct falls outside of the ambit of HRS § 706–660.1. Thus, by virtue of the plain language of HRS § 706–660.1, Vellina's theft of a firearm and a semi-automatic firearm did not automatically subject him to the enhancement of a mandatory minimum term of imprisonment.

In *State v. Ambrosio*, 72 Haw. 496, 824 P.2d 107 (1992), this court held that the defendant could be sentenced to a mandatory minimum term of imprisonment, pursuant to HRS § 706–660.1(a)(2) (1985), in connection with a kidnapping conviction, but could not also be sentenced to a mandatory minimum term with respect to a charge of use of a firearm during the commission of a felony.

HRS § 706–660.1(a)(2) provided:

A person convicted of a felony, where the person had a firearm in his possession or threatened its use or used the firearm while engaged in the *commission* of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:

. . . .

(2) For a class A felony—up to ten years[.]

This court stated:

The language of the above statute is clear and unambiguous. The enhanced sentencing applies to the conviction for the felony in which the firearm was used. In this case, it was the kidnapping.

The legislature has chosen to make the use of a firearm in the commission of a felony the basis for enhanced sentencing for that felony, and it has also chosen to make such use a separate felony, but it clearly has not chosen to impose two man-datory minimum sentences for one use of a gun.

Accordingly, the judge below properly applied the statute when sentencing appellant for kidnapping. The judge below improperly applied the statute when sentencing appellant for the felony of using a firearm in the commission of the kidnapping.

*Ambrosio*, 72 Haw. at 497, 824 P.2d at 108.

Analogously, the legislature has specifically chosen to make the *use* of a firearm in the commission of a felony the basis for enhanced sentencing in connection with *that* felony, and it has also chosen to make the theft of a firearm a separate felony, but it has *not* chosen to impose a mandatory minimum prison term for the theft of that firearm, unless a different firearm is used in the commission of the theft.

Had the legislature not chosen to classify the theft of a firearm as a first degree offense, and therefore a class B felony, then the degree of theft with which Vellina would have been charged would typically have been commensurate with the value of the firearm; *i.e.*, had the firearm been worth $350.00 or had Vellina stolen it from the person of another, then a charge of second-degree theft, a class *C* felony, would have followed. *See* HRS § 708–831 (1993 & Supp.2004). Moreover, had Vellina committed theft of property, other than a firearm, valued at $350.00, but used a firearm in the commission of *that* class C felony, *then* he would have been subject to a mandatory minimum term of imprisonment of up to three years, inasmuch as he would have used a firearm while engaged in the commission of a felony. *See* HRS § 706–660.1(1)(d).

In essence, convicting Vellina of first-degree theft, pursuant to HRS § 708–830.5(1)(b), *and* sentencing him to mandatory minimum terms of imprisonment, pursuant to HRS §§ 706–660.1(1)(c) and (3)(c), punished him twice for the theft of the same firearms, inasmuch as the theft of the firearms (the values of which presumably did not exceed $20,000.00 each, *see* HRS § 708–830.5(1)(a) (1993)) jump-shifted the seriousness of his offenses to first-degree rather than second, third, or fourth-degree theft based on the

value of the guns. *See* HRS §§ 708–831, 708–832 (1993), and 708–833 (1993).

Accordingly, we hold that the circuit court erred in sentencing Vellina to mandatory minimum terms of imprisonment pursuant to HRS §§ 706–660.1(1)(c) and (3)(c) in connection with Counts III and IV.

B. *The Circuit Court Plainly Erred In Sentencing Vellina To Consecutive Prison Terms Based Upon Uncharged Alleged Misconduct.*

■ Vellina argues that the circuit court plainly erred in sentencing him to consecutive terms of imprisonment based upon uncharged misconduct alleged by the prosecution at the sentencing hearing. We agree.

■ "In determining the particular sentence to be imposed, the court must consider a variety of factors [citing HRS § 706–606 [ (1993) [8]]] in exercising its discretion in fitting the punishment to the crime 'as well as the needs of the individual defendant and the community.'" *State v. Nunes*, 72 Haw. 521, 524–25, 824 P.2d 837, 839 (1992) (quoting *State v. Kumukau*, 71 Haw. 218, 225, 787 P.2d 682, 687 (1990)) (footnote omitted) (some brackets added and some in original).

■ Within the range of discretion that the Hawai'i Penal Code affords courts in imposing sentences, HRS § 706–668.5 (1993) [9] authorizes sentencing courts to impose sentences consecutively under certain circumstances.

HRS § 706–668.5 (1993) permits consecutive sentencing if multiple terms of imprisonment are imposed on a criminal defendant at the same time. The legislative purpose of the statute is to give the sentencing court discretion to sentence a defendant to a term of imprisonment to run either concurrently or consecutively. Discretionary use of consecutive sentences is properly imposed in order to deter future criminal behavior of the defendant, to insure public safety, and to assure just punishment for the crimes committed. Absent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706–606 (1993).

*State v. Tauiliili*, 96 Hawai'i 195, 199–200, 29 P.3d 914, 918–19 (2001) (footnotes and citations omitted).

At Vellina's sentencing hearing, the deputy prosecuting attorney (DPA) argued for the imposition of consecutive sentences based upon the DPA's claim that Vellina had "sold those firearms to a drug dealer for drugs." The DPA offered no proof to substantiate his allegation that Vellina had sold the semi-automatic rifle that he stole to a "drug dealer." The circuit court likewise did not question the DPA regarding the basis for his

**8.** HRS § 706–606 provides:

> **Factors to be considered in imposing a sentence.** The court, in determining the particular sentence to be imposed, shall consider:
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) The need for the sentence imposed:
> (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
> (b) To afford adequate deterrence to criminal conduct;
> (c) To protect the public from further crimes of the defendant; and
> (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) The kinds of sentences available; and

> (4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**9.** HRS § 706–668.5 provides:
> **Multiple sentence of imprisonment.** (1) If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently.
> (2) The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706–606.

belief that Vellina had sold the firearm to a drug dealer.

In sentencing Vellina, the circuit court stated, "Now, when I hear that ... some drug dealer now has ... an illegal semi-automatic weapon that you stole and transferred to him, I mean, that's pretty damaging to the community." The circuit court proceeded to sentence Vellina, "taking into consideration ...,. particularly, the need to make an example of this kind of behavior to the community and to promote community safety," to consecutive terms of imprisonment totaling twenty years.

In *Nunes,* this court held that the trial court unconstitutionally punished the defendant for an uncharged crime by sentencing him to thirty days in prison upon determining that the victim in a family court abuse case had lied for the defendant. Because this court could find no evidence that the victim had lied for the defendant except that her testimony conflicted with the statement that she had previously given to the police, we stated that "[i]n essence, the judge imposed a sentence for uncharged crimes— either intimidating a witness or tampering with a witness." *Id.* at 525, 824 P.2d at 840.

■ In the present matter, the circuit court unquestionably determined that Vellina had "transferred" the semi-automatic firearm to a drug dealer and sentenced him with that in mind. Similar to *Nunes,* the circuit court imposed punishment for uncharged crimes— possibly either transfer and possession of firearms, pursuant to HRS § 134-4 (1993), or the prohibited transfer of firearms, pursuant to HRS § 134-8 (1993). *Id.* at 526, 824 P.2d at 840. We see nothing in the record to support the circuit court's conclusion that Vellina transferred a semi-automatic firearm to a drug dealer. Indeed, a presentence investigation report was not even prepared for the present matter.

> While a court has broad discretion in imposing a sentence, and can consider the candor, conduct, remorse and background of the defendant as well as the circumstances of the crime and many other factors, a judge cannot punish a defendant for an uncharged crime in the belief that it too deserves punishment.

*Nunes,* 72 Haw. at 526, 824 P.2d at 840.

As such, it appears that the circuit "court clearly exceeded the bounds of reason" in sentencing Vellina. *Kaua,* 102 Hawai'i at 7, 72 P.3d at 479 (citations omitted). Furthermore, because Vellina's rights were substantially affected, we hold that the circuit court plainly erred in sentencing Vellina to consecutive terms of imprisonment based on the unsubstantiated allegation that he had transferred the semi-automatic firearm to a drug dealer.

## IV. CONCLUSION

In light of the foregoing analysis, we vacate the circuit court's judgment of conviction and sentence and remand for further proceedings.