135 P.3d 1044

STATE of Hawai'i, Respondent/Plaintiff–Appellee

v.

Scott MIKASA, Petitioner/Defendant–Appellant (No. 25776 (CR. No. 02–1–0090)).

State of Hawai'i, Respondent/Plaintiff–Appellee

v.

Scott Mikasa, Petitioner/Defendant–Appellant (No. 25777 (CR. No. 02–1–0498)).

State of Hawai'i, Respondent/Plaintiff–Appellee

v.

Scott S. Mikasa, also known as "Squirrely," Petitioner/Defendant–Appellant (No. 25778 (CR. No. 03–1–0036)).

No. 25776.

Supreme Court of Hawai'i.

June 5, 2006.

Josette Anne Wallace, on the application, for petitioner/defendant-appellant.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We granted certiorari herein to clarify the application by the Intermediate Court of Appeals (the ICA) of the law relevant to a defendant's claim that a sentencing court relied on an uncharged crime in imposing sentence. Petitioner/Defendant–Appellant Scott Mikasa (Petitioner) filed an application for writ of certiorari [1] on April 28, 2006 (ap-

---

1. Pursuant to Hawai'i Revised Statutes (HRS) § 602–59 (Supp.2005), a party may appeal the decision of the Intermediate Court of Appeals (ICA) only by an application to this court for a writ of certiorari. See HRS § 602–59(a). In determining whether to accept or reject the ap-

plication), requesting that this court review the published opinion of the ICA,[2] affirming the March 24, 2003 amended judgments of conviction and sentences of the second circuit court (the court)[3] entered in Cr. Nos. 02–1–0090(3) (Case 090), 02–1–0498(3) (Case 498), and 03–1–0036(3) (Case 036). *See State v. Mikasa*, 110 Hawai'i 441, at 447, 449–50, 134 P.3d 607, at 613, 615–16, No. 25776, (App. 2006).

## I.

The relevant facts follow.

On February 22, 2002, Petitioner was charged by indictment, as a *principal or accomplice*, in Case 090, with (1) Promoting a Dangerous Drug in the First Degree under Hawai'i Revised Statutes (HRS) § 712–1241(1)(a)(i) (2003) (Count I), (2) Prohibited Acts Related to Drug Paraphernalia in violation of HRS § 329–43.5(a) (1993) (Count II), (3) Attempted Promoting a Dangerous Drug in the First Degree under HRS §§ 705–500 (1993) and 712–1241(1)(b)(ii)(A) (2003) (Count III), (4) two counts for the offense of Promoting a Detrimental Drug in the Third Degree in violation of HRS § 712–1249(1) (1993) (Counts IV and V), and (5) Promoting a Controlled Substance, In, On, or Near Schools in violation of HRS § 712–1249.6(1)(b) (2003) (Count VIII). (Emphasis added.) Petitioner was also charged with Promoting a Dangerous Drug in the First Degree under HRS § 712–1241(1)(d) (2003) (Count VI), two counts of the offense of Prohibited Acts Related to Drug Paraphernalia under HRS § 329–43.5(a) (Count VII and X), and Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712–1243(1) (2003) (Count IX).

On September 16, 2002, in Case 498, Petitioner was charged by indictment with Promoting a Dangerous Drug in the Third De-

gree in violation of HRS § 712–1243(1) (Count I), Prohibited Acts Related to Drug Paraphernalia under HRS § 329–43.5(a) (Count II), and Promoting a Detrimental Drug in the Third Degree in violation of HRS § 712–1249(1) (Count III).

On January 21, 2003, in Case 036, Petitioner was charged by complaint with Promoting a Dangerous Drug in the First Degree under HRS § 712–1241(1)(a)(I) (Count I), and Prohibited Acts Related to Drug Paraphernalia under HRS § 329–43.5(a) (Count II).

On January 21, 2003, Respondent/Plaintiff–Appellee State of Hawai'i (the prosecution) sent a plea offer to Petitioner's counsel. The plea offer encompassed Cases 090, 498, and 036 and discussed the sentence that could be imposed upon Petitioner. In relevant part, it stated:

> 4. *The maximum term the State may argue for is two (2) consecutive twenty (20) year terms of imprisonment in the above mentioned cases*, with a recommendation for a mandatory minimum of five (5) years prison;
>
> 3. [sic] There are no other general or specific agreements as to sentencing;
>
> 4. [sic] A presentence report will be requested.
>
> . . . .
>
> It is understood that the above constitutes the full and complete plea offer in this matter and that said plea offer affects only those matters referenced above. No additional promises, agreements, or conditions, either expressed or implied, have been entered into other than those set forth above.
>
> It is further understood that the sentence to be imposed upon the defendant is within the sole discretion of the sentencing judge, and that this department does not make any promise or representation as to

---

plication for writ of certiorari, this court reviews the ICA decision for:

> (1) grave errors of law or of fact, or (2) obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of such errors or inconsistencies dictating the need for further appeal.

HRS § 602–59(b). The grant or denial of a petition for certiorari is discretionary with this court. *See* HRS § 602–59(a).

**2.** The opinion was authored by Associate Judge John S.W. Lim and was joined by Chief Judge James S. Burns and Associate Judge Corinne K.A. Watanabe.

**3.** The Honorable Joseph E. Cardoza presided.

what sentence the defendant will actually receive.

(Emphasis added.) On January 23, 2003, Petitioner entered his No Contest Plea. The No Contest Plea incorporated the plea offer and provided in relevant part:

6. *I understand that the court may impose any of the following penalties for the offense(s) to which I now plead:* the maximum term of imprisonment, any extended term of imprisonment, any mandatory minimum term of imprisonment specified above; *consecutive terms of imprisonment (if more than one charge);* restitution; a fine; a fee and/or assessment; community service; probation with up to one year of imprisonment and other terms and conditions.

. . . .

8. *I have not been promised any kind of deal or favor of leniency by anyone for my plea, except that I have been told that the government has agreed as follows (if none, write "None"):*

See copy of January 21, 2003 letter from Carson Tani attached hereto as Attachment "A."

. . . .

x The court has agreed to follow the plea agreement pursuant to Rule 11, Hawai'i Rules of Penal Procedure.

(Emphases added.)

The Pre-sentence Investigation Report (PIR) stated in relevant part:

Cr. No. 02–1–0090(3):

. . . .

The police investigation reveals that on February 14, 2002, Search Warrant # 2002–36 was executed at 37 Kono Place, Kahului, a residence being occupied by [Appellant], Peter Kamalii [ (Kamalii) ], Jonathan Buesa [ (Buesa) ], Jason Bio and Patrick Racadio. Search Warrant 2002–37 was executed upon Scott Mikasa's person at the said location.

*As a result of Search Warrant # 2002–36, the search of a black bag that was next to Mikasa resulted in the recovery of the following:*

Item # 1: Twenty (20) ziplock packets possessing crystal methamphetamine with the combined net weight of 2.20 ounces.

Item # 2: .29 grams of Marijuana

Item # 3: Numerous clear plastic packets

Identification of Mikasa and Kamalii were recovered from the black bag.

A search within a black bag that was next to Buesa resulted in the recovery of the following:

Item # 1: Two (2) ziplock packets possessing suspected crystal methamphetamine with the combined net weight of 4.88 grams.

Item # 2: .04 net grams of marijuana

Item # 3: Numerous clear plastic packets

Item # 4: Digital scales

Item # 5: $1,280 in U.S. Currency

Identification of Buesa were recovered from within said bag.

. . . .

As a result of Search Warrant # 2002–37, Mikasa's person was search [sic]. Found was $1,872.00 in cash, identification of Mikasa, and a packet possessing .54 grams was recovered from his shorts pocket.

(Emphasis added.)

The sentencing hearing took place on March 20, 2003. The court acknowledged that it was aware of the plea agreement and was in receipt of the PIR and a letter from Petitioner. In part an undated letter from Petitioner that was addressed to the court related the following:

My drug addiction is the real reason that I'm here today. It's true that I'm responsible for everything I'm charged with, but there are other facts to this case that I would like to present before you pass sentence.

Crystal methamphetamine is my addiction. I am totally addicted to this drug, and this drug alone. I don't drink, smoke, or do any other drug but ice.

Everyday, all day. 24/7. I didn't have a life. Ice was my life. I was powerless. I was not the type of "drug dealer" that most people would refer to as a "dealer," because what I did was the best way I knew for me to support my drug habit. I

never did it for the money, or the girls, the cars, jewelry, or anything else. I was just an errand boy. I picked up and I delivered drugs and cash in return for my own personal supply. And as long as I had my dope I was happy. I didn't make any money for myself because I didn't want any. I just wanted my dope. I've been in car accidents because I fell asleep while driving because I was up for days with no sleep. I didn't eat, didn't sleep, and a lot of times I didn't even take a bath. Just normal everyday things were non-existent. I didn't have friends. I didn't have a girlfriend. Ice was my girlfriend, my friend, my enemy, my mom, my dad, my everything.

It was sickening. And I couldn't stop. I knew it wasn't good for me and that it would eventually destroy me, but I still couldn't stop. Ice had total control of the life I was living. I am a drug addict and I need help. This is a very powerful and deadly drug. If I was released right now I would still smoke ice. That's how much power it has on me. I'm sorry for the things I've done, and the people I've hurt. I didn't mean to hurt anyone. I've been doing some soul-searching, but it's still a little confusing and unclear. There are a lot of things I can't remember. All I know now is that even with the reality of facing prison, I still crave for ice. I just can't understand it.

Petitioner's counsel discussed Petitioner's struggles with drug addiction and asked that any sentences imposed upon Petitioner be served concurrently. The prosecution then argued that Petitioner was "dealing" drugs to support his own drug habit and had committed additional offenses while released on bail on Case 090:

[I]t's just too bad that the use by this defendant, I guess, inevitably escalated to dealing, because, as the court knows, the only real way to support a habit like [Petitioner's] is to deal. Because, you know, there is no way you can come up with the amount of money that you need.

The problem with the dealing, your Honor, is that dealing effects [sic] pretty much everybody in our community, because when you deal large amounts of methamphetamine, obviously that promotes more drug use by the users.

. . . .

And when [Petitioner] was arrested, he was released on bail. And then he commits another charge of Promoting a Dangerous Drug in the Third Degree, but that's just a residue amount. And then while he's still awaiting trial on the initial case in 0090, he's arrested again with an even larger amount of methamphetamine, about 94—a little over 94 grams of methamphetamine.

We are talking three and a half ounces of methamphetamine, your Honor. He's also got about $8700 in his pocket.

So I think it's clear what [Petitioner] was doing in 0090, and 0036, which is, you know, just by the large amounts [sic] of cash that was found on him and the large amounts of methamphetamine that was found on him, that it was for distribution, your Honor.

The prosecution requested that the court sentence Petitioner to two consecutive twenty year sentences.

The court discussed the allegations of dealing with the prosecution:

THE COURT: If I'm reading [Petitioner's] letter, it would appear that he is—if I'm reading it correctly, he's conceded that he was dealing.

. . . .

THE COURT: . . . So sounds like he is not taking issue with that. I guess I just comment on that because your argument may suggest that there is an issue about that, but it sounds like that's not being—

[PROSECUTOR] No, your Honor. I didn't mean that to be an issue.

THE COURT: All right.

Petitioner made a brief statement in which he stated that he needed help to overcome his drug addiction.

The court then proceeded to address Petitioner and to impose sentence. The court first stated that a term of imprisonment would be imposed and then noted the "troubling" nature of the facts of the case:

All right. [Petitioner], in looking at the facts of this case, and considering the factors that the court must consider in—that are set forth in Chapter 706 of the [HRS], it's clear that the court should impose a—a term of imprisonment here. So that, in the court's view, is a given here.

But when I start to take a hard look at the facts of the case, this set of facts becomes quite troubling.

The court observed that the amount of drugs recovered from Petitioner, when parceled out, could amount to over a thousand uses of drugs by members of the community:

I've had quite a few individuals come into this courtroom who use crystal methamphetamine, and they will often say that they use, for example, a tenth of a gram to get high.

And I don't know if you've thought about it in these terms, but if that's correct—and I have heard enough people say that to me—with 58 grams, actually, more than that, 2.2 ounces, more than 58 grams in one instance, and some 90–plus grams in another instance—I don't know if you have thought about it, but your actions in this community have suggested that you put out a lot of misery and spread a lot of misery throughout this community.

*I don't know if you have thought about that, but just that amount alone, if you consider it in tenths of a gram, you know, that's over a thousand uses of crystal methamphetamine, and that's obviously extremely serious.* That's a lot of pain for one community to absorb.

(Emphasis added.) The court then expounded on the cost to society of drug use:

The cost to society here goes beyond those that are using, because you not only have those that are using, but—we see it all the time when we look at children who suffer as a result of parents and loved ones being addicted to drugs. So it goes well beyond those that are actually using the drug. It's those who are around that person as well. And in any community where people think that it only involves the users and their loved ones, individuals that are addicted to drugs like crystal methamphetamine commit many, many, many crimes, and so it has an impact on everyone else in the community.

Appellant's alleged involvement in "dealing" was then further discussed by the court:

And, I mean, I have to tell you this in very frank terms, and that is if you are on the supply side of this equation, and you're supplying people with the drugs, the price that people pay to you for those drugs is going to be very, very small compared to the price the people are going to pay in this courtroom when it comes time to answer [for] that kind of conduct.

The court has seen so much pain inflicted and so much misery inflicted by this drug that, you know, my feeling is all I can say to you and to others that choose to spread this kind of misery around is what sometimes is said on the street, is "Enough already."

The court also expressed its frustration with Petitioner's post-charge conduct:

You were picked up. You went out, got out on bail. You got involved again, got out on bail. You went out and came back again with even more of the drug, and here you are.

*I think it's important for this court to make sure that you understand and others understand that this is not a community, based on our laws and the principles that guide this court, that will tolerate this kind of conduct.*

*I'm going to fashion a sentence for you which I think—I hope will send a very clear message to you, and to others, that this kind of conduct can not and will not be tolerated.*

(Emphasis added.) As part of its sentence the court imposed two consecutive sentences of twenty years on Petitioner.[4]

---

4. The court sentenced Petitioner on the cases as follows:

**Case 090:** *twenty years' imprisonment for promoting a dangerous drug in the first degree* (Count I), attempted promoting a dangerous drug in the first degree (Count III), and promoting a dangerous drug in the first degree (Count VI), to be served concurrently, with a mandatory minimum term of five years, each.

After imposing sentence, the court opined that Petitioner was involved in a conspiracy:

> And, of course, you know, I want others to understand, [Petitioner], because I know they will have contact with you and they are going to want to know what happened. Clearly, you are involved in—well, I shouldn't say clearly, but *it certainly appears from the record that there is, based on what you have told me, a conspiracy to distribute drugs here in the State of Hawaii, a very active one. And so I would imagine that some of those that are involved with you are going to be kind of curious as to what happens to you,* and other individuals that think about coming to this community and distributing drugs or possessing drugs of this nature will likewise be interested.

(Emphasis added.)

## II.

On appeal Petitioner argued in part that the court abused its discretion in relying upon an uncharged conspiracy in fashioning its sentence. In addressing this point the ICA indicated the court did not abuse "its 'discretion in fitting the punishment to the crime[,]' " 110 Hawai'i at 449, 134 P.3d at 615 (quoting *State v. Vellina*, 106 Hawai'i 441, 449, 106 P.3d 364, 372 (2005)) (citation and internal quotation marks omitted)), because "the [PIR] ... strongly suggested [Petitioner's] involvement in large-scale drug distribution[ ] ... [and Petitioner's] own letter ... described him as an 'errand boy' in a drug dealing enterprise[,]" *id.* The ICA concluded that " '[a] sentencing court may consider any and all *accurate* information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed[,]' " 110 Hawai'i at 449, 134 P.3d at 615 (emphasis in original) (quoting *State v. Vinge*, 81 Hawai'i 309, 323, 916 P.2d 1210,

**Case 498:** five years' imprisonment for promoting a dangerous drug in the third degree (Count I) and unlawful use of drug paraphernalia (Count II); and thirty days' jail time for promoting a detrimental drug in the third degree (Count III), to be served concurrently; with a mandatory minimum term of two-and-a-half years in Count I.
**Case 036:** *twenty years' imprisonment* for promoting a dangerous drug in the first degree

1224 (1996) (emphasis added; original emphasis, citation and internal quotation marks omitted), and, therefore, the court "did not abuse its discretion in sentencing [Petitioner,]" *id.* The ICA thus affirmed the court's sentence.

■ In his application for a writ of certiorari from the ICA's decision, Petitioner poses the following question:

> Is the sentencing judge allowed to fashion a sentence, after a plea agreement, in part on an alleged conspiracy when:
>
> A) defendant has not pled to such a conspiracy;
>
> B) information about the conspiracy appears to be gleaned from:
>
> > 1) the presentence report, which relies heavily on police reports [which are not admissible in evidence]; and
> >
> > 2) a letter from the defendant written to the judge prior to sentencing[?]

We construe Petitioner's question as essentially objecting to the court's reference to a conspiracy in imposing sentence.

■ We note that in Case 090, Petitioner was charged as a principal or accomplice. In the other cases Petitioner was apparently charged as a principal. A principal is the person that commits the crime. *State v. Fukusaku*, 85 Hawai'i 462, 488, 946 P.2d 32, 58 (1997) (defining principal as "the one who actually commits a crime" (quoting *Black's Law Dictionary* 1192 (6th ed.1990))). HRS § 702–222 (1993) defines accomplice liability as follows:

> **Liability for conduct of another; complicity.** A person is an accomplice of another person in the commission of an offense if:

(Count I) and five years' imprisonment for unlawful possession of drug paraphernalia (Count II), to be served concurrently; *said terms to be served consecutively to the terms imposed in Cases 090 and 498.*
(Emphases added.) *See State v. Mikasa*, No. 25776, 110 Hawai'i at 447, 134 P.3d at 613 (App. Apr. 7, 2006).

(1) With the intention of promoting or facilitating the commission of the offense, the person:

(a) Solicits the other person to commit it; or

(b) Aids or agrees or attempts to aid the other person in planning or committing it; or

(c) Having a legal duty to prevent the commission of the offense, fails to make reasonable effort so to do; or

(2) The person's conduct is expressly declared by law to establish the person's complicity.

The Commentary states that this section avoids the concept of "conspiracy" in determining accomplice liability, explaining that:

The Code avoids the vague concept of conspiracy in basing penal liability on the conduct of another, and focuses instead on the conduct of the accused which is sufficient to establish the accused's complicity. . . . Although the statutory law did not resort to the term "conspiracy" to establish complicity, the court has.[5] This should be avoided because in some instances, where the chain of conspirators has become attenuated, imposition of liability, on the basis of complicity, for acts of remote conspirators might be of questionable wisdom.

Commentary to HRS § 702–222 (footnote omitted).

On the other hand, conspiracy is a crime separate from the crimes Petitioner was charged with and is defined in HRS § 705–520 (1993):

**Criminal Conspiracy.** A person is guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a crime:

(1) He agrees with one or more persons that they or one or more of them will engage in or solicit the conduct or will cause or solicit the result specified by the definition of the offense; and

(2) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

This court has recognized that a defendant can be charged and convicted of a substantive crime as well as a separate conspiracy. *State v. Okumura,* 78 Hawai'i 383, 411, 894 P.2d 80, 108 (1995) (concluding that the jury should only consider the conspiracy charge after reaching verdicts on all substantive burglary charges and that the defendant could be found guilty of conspiracy, separate from the substantive burglary charges, if the jury found that the objective of the conspiracy was the commission of burglaries other than those the defendant was to be found guilty of and that an overt act in furtherance of that burglary had been committed by the defendant or one of his co-conspirators). As is apparent from the facts, Petitioner was not charged with conspiracy in any of the cases.

With respect to the court's reference to a "conspiracy," the prosecution contended on appeal in part,[6] that "the [court] did not abuse its discretion in sentencing [Petitioner] to consecutive terms of imprisonment where

---

5.  The Commentary refers to *State v. Yoshino,* 45 Haw. 640, 372 P.2d 208 (1962), and *State v. Yoshida,* 45 Haw. 50, 361 P.2d 1032 (1961).

6.  The prosecution also argued that (1) a sentencing judge has broad discretion in sentencing a defendant and therefore must be provided with complete information about the defendant, (2) the court considered the factors to be considered in imposing a sentence, as set forth in HRS § 706–606 (1993), in determining whether Petitioner's prison terms should run consecutively or concurrently, (3) "HRS § 706–668.5 (1993) permits consecutive sentencing if multiple terms of imprisonment are imposed on a criminal defendant at the same time," (4) the court had information before it from the court record in Case 090 that Petitioner was involved in a conspiracy to sell drugs, insofar as (a) Petitioner argued in his Memorandum in Opposition to State's Motion to Consolidate in that case that the drugs and drug paraphernalia found in one of the black bags belonged to Kamalii, (b) Petitioner and Kamalii were arrested for several identical offenses, (c) Petitioner and Kamalii were both charged as a "principal and/or an accomplice" in their respective indictments, and (d) Petitioner and Kamalii "were indicted pursuant to a single grand jury presentation," and (5) the court could have concluded that Petitioner was involved in a conspiracy to sell drugs based on his letter to the court because "it is clear from the context of the sentencing court's comments that [Petitioner] admitted there was some type of conspiracy." In light of the disposition herein, further mention of these arguments is unnecessary.

the court alluded to [Petitioner's] involvement in a drug distribution conspiracy *after* imposing its sentence," (emphasis in original), because "it appears that the sentencing court arguably may not have even relied on [Petitioner's] involvement in a drug distribution conspiracy as an 'aggregating factor' in imposing a consecutive sentencing [sic] in this case," inasmuch as (a) the court focused on the Petitioner's "blatant repetitive illegal conduct," and (b) the court recognized the "pain" Petitioner had caused the community "based on the large dealership amounts of methamphetamine possessed by [Petitioner]."

### III.

■ We observe, first, that it is established in this jurisdiction that although a court has broad discretion in sentencing, it cannot rely on any uncharged crime in exercising that discretion.

> While a court has broad discretion in imposing a sentence, and can consider the candor, conduct, remorse and background of the defendant as well as the circumstances of the crime and many other factors, a judge cannot punish a defendant for an uncharged crime in the belief that it too deserves punishment.

*State v. Nunes,* 72 Haw. 521, 526, 824 P.2d 837, 840 (1992). Thus a palpable claim of error arises when a sentencing court cites an uncharged crime as a factor in its sentencing decision. It is not accurate, then, to rest disposition of such a claim on whether the court had information sufficient to support its exercise of discretion. For in *Nunes* the presence of such information did not justify "punish[ment] ... for an uncharged crime in the belief that it too deserves punishment." *Id.*

As said before, Petitioner was not charged with conspiracy. Despite this, the ICA concluded that assuming that the court "indicated its reliance on [the existence of a conspiracy] *in fashioning its sentence,*" 110 Hawai'i at 449, 134 P.3d at 615 (emphasis added), the court did not abuse its discretion because it in effect "fit[ ] the punishment to the crime[,]" *id.* (quoting *Vellina,* 106 Hawai'i at 449, 106 P.3d at 372 (citation and internal

quotation marks omitted). But if the court did in fact rely on the uncharged crime of a conspiracy in "setting its sentence," its sentence must be vacated under *Nunes,* 72 Haw. at 526, 824 P.2d at 840 (observing that, except for the fact that the victim made inconsistent statements, trial judge's belief that victim "lied for the defendant," was unsupported in the record, and holding that while a court has "broad discretion in imposing a sentence, ... a judge cannot punish a defendant for an uncharged crime in the belief that it too deserves punishment"), *Vellina,* 106 Hawai'i at 449–50, 106 P.3d at 372–73 (holding that trial court abused its discretion when it sentenced defendant to consecutive terms of imprisonment after considering an uncharged crime that was unsupported by the record), and *Vinge,* 81 Hawai'i at 321–24, 916 P.2d at 1222–25 (concluding that defendant was given "adequate notice of the possibility of receiving a sentence of consecutive terms of imprisonment" but that the trial court exceeded its authority in imposing consecutive sentences when it relied on insufficient evidence of defendant's membership in a gang as an aggravating factor in imposing the sentence).

We observe that in consonance with one of the prosecution's arguments on appeal, the ICA characterized the court's reference to a conspiracy as being a "post sentence statement[ ]." 110 Hawai'i at 449, 134 P.3d at 615. It is arguable based upon the context in which the court's remarks were made that the reference to a conspiracy was necessarily divorced from the court's preceding comments. However, the court did enumerate grounds independent of the reference to a conspiracy that would support its consecutive sentence disposition as being within the scope of discretion traditionally accorded a sentencing court. *Cf. State v. Tauiliili,* 96 Hawai'i 195, 199, 29 P.3d 914, 918 (2001) (noting that "discretionary use of consecutive sentences is properly imposed in order to deter future criminal behavior of the defendant, to insure public safety, and to assure just punishment for the crimes committed").

That fact alone, however, would not conclusively sanitize the court's sentence. In *Vinge*, this court stated that other factors would not support consecutive sentences if the court's remarks "clearly indicate[d]" that an improper ground was an "aggravating factor" in the sentencing decision:

> While Vinge's past criminal record and the egregious facts surrounding the Honsport robbery may independently support a sentence of consecutive terms of imprisonment, the sentencing court's remarks during Vinge's sentencing hearing clearly indicate that Vinge's association with the Hawaiian Home Boys, *i.e.*, his "gang-related activity," was an aggravating factor in the sentencing court's decision to impose consecutive sentences.

*Vinge*, 81 Hawai'i at 324, 916 P.2d at 1225. Thus, as stated *supra*, in *Vinge* this court concluded that the trial court improperly considered evidence of gang association in imposing sentence. *Id.*

In this case, before it imposed sentence and subsequently referred to a "conspiracy," the court was presented with and set forth a multiplicity of circumstances that would support an exercise of discretion in favor of consecutive sentences. This included information of Petitioner's continued drug offenses while awaiting disposition of his cases, his "dealing" of drugs, the impact of his conduct on the community, and the need for deterrence of other persons involved in drug offenses. In this context, the remarks of the court did not "clearly indicate" that an "aggravating factor" in the court's sentence rested on the uncharged crime of a conspiracy. On this basis we conclude the ICA's analysis was incorrect but that its ultimate decision on this issue does not require reversal and is therefore affirmed.