972 P.2d 287

STATE of Hawai'i, Plaintiff–Appellee,

v.

Brian Haaheo MAHOE, Defendant–Appellant.

No. 20909

Supreme Court of Hawai'i.

Dec. 14, 1998.

Glenn D. Choy, Honolulu, on the briefs, for defendant-appellant

Bryan K. Sano, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, AND RAMIL, JJ.

Opinion of the Court by NAKAYAMA, J.

Defendant-appellant Brian Mahoe appeals his judgment of conviction of one count of burglary in the first degree. On appeal, Mahoe argues that the trial court erred by: (1) refusing to excuse a juror for cause who stated in voir dire that he had been burglarized previously but would try to be impartial; (2) allowing evidence of a temporary restraining order to be admitted to show the unlawfulness of Mahoe's entry; and (3) instructing the jury that the offense of harassment constituted a crime against a person for the purposes of the burglary statute. Although none of Mahoe's points of error on appeal constitute reversible error, we hold that, based on our independent review of the record, Mahoe's constitutional rights to due process [1] and unanimous jury verdict [2] were violated. Therefore, we vacate Mahoe's burglary conviction and remand for a new trial. This point is dispositive of this appeal. However, we address Mahoe's third point of error because it raises a novel issue that has the potential to recur in future cases.

## I. BACKGROUND

The following facts were adduced at trial. Mahoe and Kristy Delos Santos are the parents of two children. In October, 1996, Mahoe and Delos Santos separated. Delos Santos obtained a temporary restraining order that forbade Mahoe from having contact with her, except that limited contact for the purpose of child visitation was allowed under the restraining order.

On November 15, 1996, Mahoe called Delos Santos in order to see the children. They arranged that Mahoe would come to Delos Santos's residence and wait outside by the mailbox. Delos Santos would bring the children out to see him. Later, as Delos Santos was getting the children ready to go outside to meet Mahoe, Mahoe walked into her residence without knocking. When Mahoe entered, he picked up one of his daughters and

1. Article I, section 5 of the Hawai'i Constitution (1978) provides in relevant part that "[n]o person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws[.]"

2. "[T]he right of an accused to a unanimous verdict in a criminal prosecution, tried before a jury in a court of this state, is guaranteed by article I, sections 5 and 14 of the Hawai'i Constitution." *State v. Arceo*, 84 Hawai'i 1, 30, 928 P.2d 843, 872 (1996).

began talking with her. Delos Santos was inside her residence with an acquaintance, Matt Rodrigues. Rodrigues's truck was parked in front of Delos Santos's residence.

Delos Santos told Mahoe to leave the residence. Mahoe refused to leave and a verbal argument ensued. The argument continued for quite awhile, with Mahoe going through Delos Santos's belongings and continuing to refuse to leave. Rodrigues was talking on the phone and initially took no part in the argument between Delos Santos and Mahoe. After Rodrigues finished his phone call, Mahoe approached him. According to Rodrigues's testimony, Mahoe "taunted [him] from a distance." Mahoe then approached Rodrigues and spat in his face twice. After the second time Mahoe spat in Rodrigues's face, Rodrigues approached him. Mahoe retreated and went upstairs with Delos Santos for five to ten minutes. Mahoe and Delos Santos then went outside.

After exiting the residence, Mahoe and Delos Santos argued outside. Mahoe then reentered the residence alone. According to Rodrigues's testimony, upon Mahoe's second entry he "came straight up to [Rodrigues]" then "false cracked" Rodrigues in the eye.[3] Rodrigues and Mahoe began fighting, and Rodrigues shoved him out the door. Mahoe then left.

On December 6, 1996, Mahoe was charged by complaint with one count of burglary in the first degree, in violation of Hawai'i Revised Statutes (HRS) § 708–810 (1993). At trial, the above facts were adduced from the testimony of Delos Santos and Rodrigues. Mahoe did not testify. The prosecution then presented closing arguments to the jury.

During the closing argument, the prosecuting attorney stated, in relevant part, that:

[T]here are four things that the State has to prove. Each of them the State has to prove beyond a reasonable doubt for the Defendant, Mr. Mahoe, to be guilty of this crime. . . . [One element is] that he entered or remained in that building, Kristy's house, with an intent to commit a crime

therein against either a person or property rights. And it says enter or remain with that intent. It's one or the other. He either entered the house with the intent or while he was in the house he remained in the house, he formed the intent. The State only has to prove one or the other of those two elements that he either entered or he remained with the intent to commit a crime against a person or property.

. . .

[A]sk yourself did [Mahoe] enter or remain unlawfully in Kristy's house. . . . Did he enter that second time or did he remain when he was in there the first time with the intent to commit a crime against a person either assault or harassment by spitting in Matt's face? . . . The State is just asking you to do your job and follow the law which shows that he entered the dwelling of Adele Kristy Delos Santos unlawfully, and while he was in there he had the intent to commit a crime against a person.

Mahoe did not object to any portion of the above argument.

Following the close of the evidence and final arguments, the trial court instructed the jury. The jury was instructed on the elements of burglary as follows:

[T]here are four material elements to the crime of burglary in the first degree, each of which the prosecution must prove beyond a reasonable doubt. The four elements are that on or about the 15th day of November, 1996, in the City and County of Honolulu, State of Hawaii:

1. That [Mahoe] entered or remained unlawfully in a building; to wit, the residence of [Delos Santos];

2. That he did so intentionally;

3. That he entered or remained in that building with an intent to commit a crime therein against a person or property rights;

4. That he recklessly disregarded the risk that the building was the dwelling of

---

**3.** Rodrigues testified that, after Mahoe reentered the residence, Rodrigues was talking to him and began walking towards Mahoe. Then, Rodrigues stated, Mahoe "just went punch me. . . . I had a lump that night over my eye[.].. [then] I moved more towards him, [he] punch me again . . . in my left eye."

another, and the building is such a dwelling.

The jury was instructed on the elements of assault in the third degree, as defined by HRS § 707–712 (1993), and informed that it is a crime against a person. The jury was also instructed on the offense of harassment, as defined by HRS § 711–1106(a) (1993).[4] The defense objected to this instruction on the grounds that burglary must be predicated on an offense against a person or property rights, and the offense of harassment is not an offense against a person because it is codified in HRS Chapter 711, entitled "Crimes against Public Order." The court denied Mahoe's objection, ruling that:

> I don't believe that the Court is limited to the statutory—I mean the penal code chapters in determining what is an offense against a person and what is an offense against property rights. Let me just state for the record, as I said I questioned as to whether or not I would be limited to this— the headings which are in our penal statute, in other words by chapter, to make a determination whether or not a case is an offense against a person in light of the fact that we have other sections, you know, which categorize our criminal offenses. For instance, we have a Chapter 709 which states offenses against the family and against incompetents.... [O]bviously harassment in its own definition is a crime against a person.

After trial, Mahoe was found guilty as charged and sentenced to an indeterminate term of imprisonment of ten years. Mahoe timely appealed.

## II. DISCUSSION

### A. *Violation of Mahoe's constitutional rights to due process and unanimous jury verdict*

Although not raised by Mahoe on appeal, our review of the record indicates that Mahoe's right to due process, as set forth in *State v. Arceo*, 84 Hawai'i 1, 928 P.2d 843 (1996), was violated in that there were two distinct acts upon which a juror could find Mahoe guilty and only one count of burglary. The prosecution did not elect the one act upon which it was relying to support the charge, nor did the court give a unanimity instruction. Moreover, the prosecuting attorney's closing argument misstated the applicable law regarding the meaning of "remains unlawfully" for the purpose of a burglary conviction and the court neither corrected this erroneous statement of law nor gave an instruction which correctly defined this element for the jury. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Hawai'i Rules of Penal Procedure Rule 52(b). *See also State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997); *Arceo*, 84 Hawai'i at 33, 928 P.2d at 875. Because these errors infringed on Mahoe's constitutional rights to due process and unanimous jury verdict, we address them as plain error.

■ "We answer questions of constitutional law 'by exercising our own independent constitutional judgment based on the facts of the case.' *State v. Trainor*, 83 Hawai'i 250, 255, 925 P.2d 818, 823 (1996); *State v. Lee*, 83 Hawai'i 267, 273, 925 P.2d 1091, 1097 (1996)." *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853 (parentheticals omitted). Determination of the correct meaning of "remains unlawfully" requires us to interpret the Hawai'i Penal Code.

We review statutes *de novo*. The starting point in statutory construction is to determine the legislative intent from the language of the statute itself. Our foremost obligation when interpreting a statute is to

---

4. The instruction read:

> A person commits the offense of Harassment if, with the intent to harass, annoy or alarm another person, that person: strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact. There are two material elements to the offense of Harassment. The two material elements are:
> 1. That Brian Mahoe struck, shoved, kicked, or otherwise touched another person in an offensive manner or subjected the other person to offensive physical contact.
> 2. That he did so with the intent to harass, annoy or alarm another person.

ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. We read statutory language in the context of the entire statute, and construe it in a manner consistent with its purpose. A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable. The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality. As a general rule, penal statutes are to be strictly construed. Ambiguous penal statutes are to be construed in favor of the accused.

State v. Bautista, 86 Hawai'i 207, 209–10, 948 P.2d 1048, 1050–51 (1997) (citations, brackets, and quotation marks omitted).

HRS § 708–810 (1993) provides, in pertinent part, that:

(1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and: .... (c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

■ The issue presented by this case is whether, in order to uphold Mahoe's burglary conviction, his unlawful entry must have been effected for the purpose of committing "a crime against a person or against property rights." Based on the plain language of the statute and the historical development of the offense of burglary, we hold that, in order to sustain a burglary conviction, the evidence must show that the unlawful entry was effected for the purpose of committing an offense against a person or property rights. The intent to commit the offense must have existed at the time the unlawful entry was made.

The issue presented by this case has not previously been addressed by the Hawai'i appellate courts. We begin our analysis with the plain language of the statute. In order to be convicted of the offense of burglary, the perpetrator must "intentionally [enter] or

[remain] unlawfully in a building, with intent to commit therein a crime against a person or against property rights." The Hawai'i Penal Code's definition of burglary was adopted from the Model Penal Code. The commentary to the Model Penal Code discusses the evolution of the offense of burglary as follows:

The initial development of the offense of burglary, as well as much of the later expansion of the offense, probably resulted from an effort to compensate for defects of the traditional law of attempt. The common law of attempt ordinarily did not reach a person who embarked on a course of criminal behavior unless he came very close to his goal. . . . Under that view of the law of attempt, a person apprehended while breaking into a dwelling with intent to commit a felony therein would not have committed an attempt, for he would not have arrived at the scene of his projected theft, rape, or murder. . . . The development and expansion of the offense of burglary provided a partial solution to these problems. Making *entry with criminal intent* an independent substantive offense carrying serious sanctions moved back the moment when the law could intervene in a criminal design and authorized penalties more nearly in accord with the seriousness of the actor's conduct. Since *every burglary is by hypothesis an attempt to commit some other crime,* it is appropriate to consider the sanction for the completed offense that is the objective of the burglary in evaluating the propriety of the sentence that is authorized for the burglary itself.

Model Penal Code § 221.1 (1985) (emphasis added).

Pursuant to the commentary to the Model Penal Code, the elements of the offense of burglary are established at the moment that an unlawful entry or "remaining" with the requisite criminal intent is made. It would be an unwarranted extension of Hawai'i's modern burglary statute to expand the offense of burglary to include situations in which the criminal intent develops *after* an unlawful entry or remaining has occurred. See State v. Madrid, 113 Ariz. 290, 552 P.2d 451, 452 (1976) ("[b]urglary may be distin-

guished from the crime of theft and shoplifting in that the intent to commit a theft or any felony *must be formed at the time of entry* ") (emphasis added).

The Model Penal Code defines burglary, in pertinent part, as follows: "A person is guilty of burglary if he enters a building or occupied structure ... with purpose to commit a crime therein[.]" In adopting the Model Penal Code, the Hawai'i legislature made two changes that must be addressed herein. First, the Hawai'i Penal Code provides that a person commits the offense of burglary if the person "intentionally enters *or remains unlawfully* in a building." Second, the person must have an *"intent* to commit therein a crime against a person or against property rights." Our interpretation of the legislative intent behind these changes is that the legislature did not intend to alter the Model Penal Code's requirement that an intent to commit an offense exist at the time of the unlawful entry or "remaining."

The requirement that the unlawful entry be made with *intent* to commit a crime is functionally identical to the language of the Model Penal Code that provides that the *purpose* of the entry must be the commission of a crime. HRS § 702–206(1)(c) (1993) provides that "[a] person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result." Black's Law Dictionary 1236 (6th ed.1990) defines "purpose" as "[t]hat which one sets before him to accomplish or attain; an end, *intention,* or aim, object, plan, project. Term is synonymous with ends sought, an object to be attained, *an intention,* etc." (Emphases added.) Therefore, the language of the Hawai'i statute that defines burglary as unlawful entry "with intent to commit" a crime is functionally the same as the Model Penal Code which provides that the "purpose" of the entry must be the commission of a crime. The commentary to the Model Penal Code states that "[t]he purpose *that must accompany the intrusion* is described as a 'purpose to commit a crime therein.' " (Emphasis added.) The intent and the entry must be coexisting, such that the entry is made for the purpose of committing the crime.

We have not previously addressed the meaning of "unlawfully remain" in the context of the burglary statute. We interpret this language, as have other courts that have addressed similar language, as being inserted to cover situations in which the initial entry was lawful, but the presence later becomes unlawful and the perpetrator remains with the intent to commit a crime.

In *People v. Hutchinson,* 124 Misc.2d 487, 477 N.Y.S.2d 965 (App.Div.1984), the Supreme Court of New York, Bronx County, held that, if a criminal defendant entered with true consent, his subsequent commission of a criminal act could not in and of itself convert a lawful entry into an unlawful remaining sufficient to sustain a burglary charge. The *Hutchinson* court held that "[c]riminal liability for unlawfully remaining is designed to apply to situations in which a person enters with genuine license and privilege but remains after the termination of the license or privilege." 477 N.Y.S.2d at 967. In rejecting the prosecution's argument that the commission of a criminal act was enough to uphold a conviction for burglary even if the initial entry was lawful, the court held that

> [t]his reasoning impermissibly broadens the scope of liability for burglary, making a burglar of anyone who commits a crime on someone else's premises. It erroneously merges two separate and independent elements that must coexist to establish burglary: First, the trespassory element of entry or remaining without license or privilege; Second, intent to commit a crime.

*Id.*

Other jurisdictions that have considered the meaning of the term "remains unlawfully" have reached the same interpretation as the New York courts. In *Arabie v. State,* 699 P.2d 890 (Alaska Ct.App.1985), the court addressed the statutory "remains unlawfully" language as follows:

> The commentary to [the Alaska burglary statute] explains that the "word 'remain' in the phrase 'enter or remain unlawfully' is also designed to apply to cases in which a person enters with a 'license or privilege' but remains on the premises after his li-

cense or privilege has terminated." Thus, the provision is intended to cover situations in which a person is privileged to enter a closed building but remains in the building after the privilege has expired; likewise, it applies to the situation where a person enters a building when it is open to the public but remains after the building has closed. 699 P.2d at 894.[5]

■ The general rule is that "[p]enal statutes are to be strictly construed." *State v. Ganal*, 81 Hawai‘i 358, 373, 917 P.2d 370, 385 (1996) (citation omitted). We adopt the formulation of "remains unlawfully" as interpreted by the courts of Alaska and New York, cited *supra*. A perpetrator "remains unlawfully" for the purposes of a burglary prosecution only in situations in which the individual makes an initial lawful entry, that subsequently becomes unlawful. In the instant case, Mahoe's initial entry was unlawful. Therefore, the "unlawfully remaining" portion of the statute is inapplicable to the instant case.

At the close of trial, the prosecuting attorney argued to the jury that "[t]he State is just asking you to do your job and follow the law which shows that [Mahoe] entered [Delos Santos's] dwelling unlawfully, and *while he was in there he had the intent to commit a crime against a person.*" Moreover, the prosecuting attorney argued that:

[One element of burglary is] that he entered or remained in that building, Kristy's house, with an intent to commit a crime therein against either a person or property rights. And it says enter or remain with that intent. It's one or the other. He either entered the house with the intent or while he was in the house he remained in the house, he formed the intent. The State only has to prove one or the other of those two elements that he either entered or he remained with the intent to commit a crime against a person or property.

The prosecuting attorney's statement that the element of intent may be proven if it is shown that "while [the perpetrator] was in

the house he remained in the house, he formed the intent" is an incorrect statement of the law.

Arguments of counsel generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence, and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law. *Arguments of counsel which misstate the law are subject to objection and to correction by the court.*

*Boyde v. California*, 494 U.S. 370, 384, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) (emphasis added). Here, this portion of the prosecuting attorney's closing argument did not relate to the evidence presented, but to the correct interpretation of the law. The incorrect statement of the meaning of "remains unlawfully" was not corrected by the court during the argument, nor was a correct definition presented to the jury in the instructions. *See State v. Kupihea*, 80 Hawai‘i 307, 317, 909 P.2d 1122, 1132 ("[I]mproper comments by a prosecutor can be cured by the court's instructions to the jury and . . . it will be presumed that the jury adhered to the court's instructions.").

■ We have stated that:

It is now firmly established in this jurisdiction that, where potential error "affects the integrity of the jury's findings[,] [o]nce all the evidence has been presented, it becomes the court's fundamental duty to properly instruct the jury on the law on the precise issues of fact it is to decide." This is because

[t]he trial court is the *sole source* of all definitions and statements of law. . . . It is the *duty of the circuit judge* to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and [the judge] shall state to [the jury] fully the law applicable to the facts.

5. The Alaska statute states that "[a] person commits the crime of burglary . . . if the person enters or remains unlawfully in a building with intent to commit a crime in the building." Alaska Stat. § 11.46.310(a) (Michie 1996).

*Hirahara v. Tanaka,* 87 Hawai'i 460, 463, 959 P.2d 830, 833 (1998) (citations omitted) (brackets and emphases in original). The failure of the circuit court to correct the prosecution's erroneous interpretation of "remains unlawfully" therefore impacts the integrity of the jury verdict. We decline to decide whether this would, in isolation, amount to reversible error because Mahoe's rights to due process and a unanimous jury verdict were also violated.

> When the evidence indicates that several distinct criminal acts have been committed, but [the] defendant is charged with only one count of criminal conduct, jury unanimity must be protected.... The [prosecution] may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on one criminal act will be assured. When the [prosecution] chooses not to elect, this jury instruction must be given to ensure the jury's understanding of the unanimity requirement.

*Arceo,* 84 Hawai'i at 31, 928 P.2d at 873 (brackets in original) (quoting *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173, 178 (1984)).

 Mahoe made two distinct entries into Delos Santos's residence. The prosecution did not elect one entry upon which to rely, instead arguing facts from both entries to the jury in its closing argument. The court did not give a unanimity instruction as required by *Arceo.* Therefore, Mahoe's constitutional right to a unanimous verdict was violated. Considering both the violation of the right to a unanimous jury verdict and the lack of correct instruction of the meaning of "remains unlawfully," we hold that these errors amount to plain error requiring that Mahoe's conviction be vacated and remanded for a new trial.

**B. *Harassment is a crime against a person.***

 HRS § 708–810 provides that a person commits the offense of burglary in the first degree if "the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime *against a person or against property rights* ...*"* The trial court instructed the jury on the offenses of assault and harassment as "crimes against a person" sufficient to uphold a conviction for burglary. Mahoe objected to the instruction on the offense of harassment. The basis of Mahoe's objection is that harassment is not a "crime against a person" within the meaning of the burglary statute.

HRS § 711–1106 defines harassment as:

> A person commits the offense of harassment if, with intent to harass, annoy, or alarm another person, that person: (a) Strikes, shoves, kicks or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.] [6]

HRS Chapter 711 is entitled "Offenses against Public Order." Mahoe argues that a conviction for burglary should only be predicated on offenses enumerated in HRS Chapters 707 (entitled "Offenses Against the Person") or Chapter 708 (entitled "Offenses Against Property Rights").

HRS § 708–810 does not define, by its terms or in commentary, the universe of crimes "against a person or property rights" that can form the foundation of a burglary conviction. We have previously held that "intentionally entering or intentionally remaining unlawfully ... with the intent to commit *any crime* against a person or property rights constitutes burglary." *State v. Robins,* 66 Haw. 312, 315, 660 P.2d 39, 41 (1983) (emphasis added). In *State v. Lau,* 78 Hawai'i 54, 890 P.2d 291 (1995), we rejected a claim that driving under the influence was a "traffic offense" and not a "criminal offense" because the offense was codified in HRS Chapter 291, entitled "Traffic Violations." *Lau* is instructive here because it stands for the proposition that the elements of the offense determine how to characterize it. The

---

6. Although there are other subsections of the harassment statute, this was the only one given to the jury in this case.

rationale in *Lau* is dispositive of Mahoe's claim that the title of the chapter should be mechanically applied to determine what constitutes a "crime against a person."

Harassment is clearly a crime against a person. The statutory definition states that a person commits the offense of harassment if, "with intent to harass, annoy, or alarm *another person,* that person: (a) strikes, shoves, kicks, or otherwise touches *another person* in an offensive manner or subjects *the other person* to offensive physical contact." HRS § 711–1106 (emphases added). Because the broad language of the burglary statute does not evidence an intent to confine crimes "against a person" to those enumerated in Chapter 707, and harassment is a crime against a person, we hold that a conviction for burglary may be predicated on the offense of harassment.

### III. CONCLUSION

For the above reasons, we vacate Mahoe's conviction of burglary in the first degree and remand for a new trial.