112 P.3d 759

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Herman R. COELHO, Jr.,
Defendant–Appellant.**

**No. 25805.**

Intermediate Court of Appeals of Hawai'i.

April 28, 2005.

Jeffrey W. Ng, Deputy Public Defender, on the briefs, for defendant-appellant.

Artemio C. Baxa, Deputy Prosecuting Attorney, County of Maui, on the briefs, for plaintiff-appellee.

BURNS, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Herman R. Coelho, Jr. (Coelho) appeals from the Amended Judgment filed on May 6, 2003 in the Circuit Court of the Second Circuit (circuit court).[1]

On appeal, Coelho contends the circuit court erred by sentencing him pursuant to Hawaii Revised Statutes (HRS) § 706–660.1(3)(c) (1993) because this statute was not the appropriate sentencing statute. We agree and therefore vacate the Amended Judgment and remand for resentencing.

## I.

On January 18, 2002, in a prior case, Coelho was found guilty of Place to Keep Unloaded Firearm in violation of HRS § 134–6(c) (Supp.2004).[2] Coelho was sentenced to probation for five years with special terms and conditions. One of the terms was that Coelho "must not own/possess/have in [his] control any type of firearm and/or ammunition."

On July 30, 2002, several police officers were involved in executing search warrants to recover firearms believed to be possessed illegally by Coelho. The search warrants were for premises located on Kamehameha IV Highway in Onealii, Moloka‘i, and three vehicles registered to Coelho. Two officers were assigned to locate Coelho at his place of employment at Moloka‘i Landfill and to bring him to the residence. Upon searching the trunk of one of Coelho's vehicles, an officer recovered a Norinco SKS 35 millimeter semi-automatic rifle and one hundred twenty-six

---

1. The Honorable Shackley F. Raffetto presided.

2. Hawaii Revised Statutes (HRS) § 134–6 (Supp. 2004) provides in relevant part:

   **§ 134–6  Carrying or use of firearm in the commission of a separate felony;  place to keep firearms;  loaded firearms;  penalty.**
   . . . .
   (c) Except as provided in sections 134–5 and 134–9, all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn;  provided that it shall be lawful to carry unloaded firearms or ammunition or both in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business,

   residence, or sojourn, or between these places and the following:  a place of repair;  a target range;  a licensed dealer's place of business;  an organized, scheduled firearms show or exhibit;  a place of formal hunter or firearm use training or instruction;  or a police station. "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.
   . . . .
   (e) . . . . Any person violating this section by carrying or possessing an unloaded firearm, other than a pistol or revolver, shall be guilty of a class C felony.

7.62 by 39 millimeter cartridges. Based on the recovery of the rifle and ammunition, Coelho was arrested.

On July 31, 2002, Coelho was charged by complaint with Prohibited Possession of a Firearm and Prohibited Possession of Firearm Ammunition in violation of HRS § 134-7(b) (Supp.2004).[3] Coelho requested a preliminary hearing in the District Court of the Second Circuit, Moloka'i Division (district court). After the hearing, the district court found probable cause and committed Coelho's case to the circuit court.

Prior to the start of trial, the parties stipulated to the following: (1) Coelho had been previously convicted of a felony; (2) on the date of his arrest for the possession charges, Coelho was still on probation for the prior felony; (3) at sentencing for the prior felony conviction, Coelho was told by the court that he could not own, possess, or control any firearm or firearm ammunition; (4) Coelho had acknowledged with his signature that he understood the terms and conditions of his probation for the prior conviction, including that he must not own, possess, or control any type of firearm and/or firearm ammunition; and (5) Coelho knew that, as a convicted felon, it was illegal for him to own, possess, or control any firearm or firearm ammunition.

On February 11, 2003, the jury found Coelho guilty of Prohibited Possession of a Firearm and not guilty of Prohibited Possession of Firearm Ammunition. On Special Interrogatory No. 1, the jury marked "Yes" to the question: "As to Count One, Prohibited Possession of a Firearm, if and only if you find the Defendant guilty, did the prosecution prove beyond a reasonable doubt that the gun was a semi-automatic?" On February 13, 2003, the circuit court filed a Judgment of Acquittal as to the Prohibited Possession of Firearm Ammunition charge.

On April 7, 2003, the State filed a "Motion for Imposition of Mandatory Minimum Period of Imprisonment" (Motion for Mandatory Minimum). The State argued that Coelho should be sentenced as a repeat offender, pursuant to HRS § 706-606.5(1)(a)(iii) (Supp. 2004),[4] to a mandatory minimum term of imprisonment of three years and four months. The State argued that Coelho should also be sentenced, pursuant to HRS § 706-660.1(3)(c) (1993), to a mandatory minimum term of imprisonment of ten years for possession or use of a semiautomatic firearm in a felony. The State requested that the mandatory minimum terms run concurrently.

Coelho's sentencing hearing was held on April 10, 2003. At the hearing, Coelho's counsel stated: "I don't know the court's position, but I can say on the record that 706-60.1[sic] doesn't apply to cases where there's only the possession of a firearm. I reviewed the cases, and they all involve another crime such as terroristic threatening." The circuit court stated its position "that the ten year mandatory doesn't apply." The State replied that the circuit court should

---

3. HRS § 134-7 (Supp.2004) provides in relevant part:

> **§ 134-7 Ownership or possession prohibited, when; penalty.**
>
> . . . .
>
> (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.
>
> . . . .
>
> (h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony.

4. HRS § 706-606.5 (Supp.2004) provides in relevant part:

> **§ 706-606.5 Sentencing of repeat offenders.** (1) Notwithstanding section 706-669 and any other law to the contrary, any person convicted of . . . any class B felony . . . and who has a prior conviction or prior convictions for the following felonies, including an attempt to commit the same: murder, murder in the first or second degree, a class A felony, a class B felony, any of the class C felony offenses enumerated above, or any felony conviction of another jurisdiction shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:
>
> (a) One prior felony conviction:
>
> . . . .
>
> (iii) Where the instant conviction is for a class B felony—three years, four months [.]

"impose a ten-year indeterminate term of imprisonment with a three-year, four-month mandatory minimum. We do object, for the record, that the Court is not imposing ten years mandatory minimum on the basis of [Coelho] being in possession of a semi-automatic firearm."

The circuit court sentenced Coelho to ten years of incarceration with a mandatory minimum of three years and four months for Prohibited Possession of a Firearm. The Judgment was filed on April 10, 2003.

On April 28, 2003, the State filed a "Motion for Reconsideration." The State argued that HRS § 706–660.1(3) applied to Coelho's case because he "was being sentenced for a 'firearm felony' where he had a semiautomatic firearm in his possession." The State requested the circuit court reconsider its partial denial of the State's Motion for Mandatory Minimum and impose a ten-year mandatory minimum pursuant to HRS § 706–660.1(3).

On April 30, 2003, Coelho filed his Notice of Appeal, appealing from the Judgment and Sentence entered on April 10, 2003.

On May 2, 2003, the State filed its "Supplement to Motion for Reconsideration" (Supplement). In its Supplement, the State argued that "the portion of the sentence with respect to non-imposition of the mandatory minimum term required under HRS § 706–660.1(3) is an illegal sentence which should be corrected on reconsideration of this Court."

At the hearing on the Motion for Reconsideration, the circuit court stated:

I'm going to go ahead and rule.

I went back and reviewed this matter carefully. It was set for hearing last week, and I continued it so we'd have a chance to do that. It does appear to the court that 706–660.13(C) [sic] does apply, and I realize that it's the same felony, but it appears that the legislature intended this enhancement where it's an automatic pistol use or semi-automatic. And there was notice. There was a special interrogatory. The jury found that it was a semi-automatic. And although there is no case exactly on point, I think, after looking at these cases, that the ten years does apply.

So I'm going to grant the motion; however, under *State v. Ambrosio*, I don't think that both of these are mandatory minimums at this time. So I'm going to reverse the three-years-four-month [sic] mandatory minimum and impose the ten-year mandatory minimum under H.R.S. 706–660.13(C) [sic].

On May 6, 2003, the circuit court filed an Amended Judgment, sentencing Coelho to ten years of incarceration with a mandatory minimum of ten years.

The circuit court filed its "Findings of Fact and Conclusions of Law; Order Granting State's Motion for Reconsideration" (FOF/COL) on May 28, 2003. In its FOF/COL, the circuit court concluded that (1) HRS § 706–660.1(3)(c) was applicable and mandatory; (2) HRS § 706–606.5 was applicable and mandatory; and (3) *State v. Cornelio*, 84 Hawai'i 476, 935 P.2d 1021 (1997), was not applicable and *State v. Ambrosio*, 72 Haw. 496, 824 P.2d 107 (1992), was applicable, such that Coelho could not be sentenced concurrently to both a mandatory minimum term under HRS § 706–606.5 and a mandatory minimum term under HRS § 706–660.1(3)(c).

## II.

### A. Jurisdiction

On April 30, 2003, Coelho filed a Notice of Appeal from the April 10, 2003 Judgment. Coelho's sentence as set forth in the April 10, 2003 Judgment was for ten years of imprisonment with a mandatory minimum of three years and four months. On May 6, 2003, after granting the State's Motion for Reconsideration, the circuit court filed an Amended Judgment, changing Coelho's mandatory minimum to ten years. Coelho did not file a second notice of appeal within thirty days after the entry of the May 6, 2003 Amended Judgment as required under Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b)(1). However, in the instant appeal, Coelho argues that the circuit court erred by sentencing him to the mandatory minimum of ten years as set forth in the Amended Judgment.

"As a general rule, compliance with the requirement of timely filing of a notice of appeal is jurisdictional, and we must dismiss an appeal on our motion if we lack jurisdiction." *State v. Knight*, 80 Hawai'i 318, 323, 909 P.2d 1133, 1138 (1996) (internal quotation marks and citation omitted). However, "a criminal defendant[ ] is entitled, on his first appeal, to effective counsel who may not deprive him of his appeal by failure to comply with procedural rules." *Id.* at 323–24, 909 P.2d at 1138–39. Therefore, in the interest of justice, we decline to dismiss this appeal and will address the merits of Coelho's claim.

## B. Coelho's Sentence

Coelho contends the circuit court erroneously granted the State's Motion for Reconsideration and incorrectly concluded that HRS § 706–660.1(3)(c) was applicable and mandatory.

"The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion *or unless applicable statutory* or constitutional *commands have not been observed.*" *Barnett v. State*, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999) (emphasis added) (quoting *State v. Davia*, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998)).

In *State v. Mahoe*, 89 Hawai'i 284, 972 P.2d 287 (1998), the Hawai'i Supreme Court stated:

> We review statutes *de novo*. The starting point in statutory construction is to determine the legislative intent from the language of the statute itself. Our foremost obligation when interpreting a statute is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. We read statutory language in the context of the entire statute, and construe it in a manner consistent with its purpose. *A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable. The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsis-*

*tency, contradiction, and illogicality.* As a general rule, penal statutes are to be strictly construed. Ambiguous penal statutes are to be construed in favor of the accused.

*Id.* at 287–88, 972 P.2d at 290–91 (emphasis added) (quoting *State v. Bautista*, 86 Hawai'i 207, 209–10, 948 P.2d 1048, 1050–51 (1997)).

Accordingly,

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
>
> This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

*State v. Rauch*, 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000) (internal quotation marks, citations, brackets, and ellipses omitted; block quote format changed) (quoting *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999)).

### 1. Plain Language of HRS § 706–660.1

Hawaii Revised Statutes § 706–660.1 provides in relevant part:

> § 706–660.1 **Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony.**
>
> . . . .
>
> (3) A person convicted of a felony, where the person had a semiautomatic firearm or automatic firearm in the per-

son's possession or used or threatened its use *while engaged in the commission of the felony,* whether the semiautomatic firearm or automatic firearm was loaded or not, and whether operable or not, *shall in addition to* the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows: .

. . . .

(c) For a class B felony—ten years [.]

(Emphasis added.)

The plain language of the statute indicates that this statute applies when (1) a person is convicted of a felony, and (2) while engaged in the commission of that felony, (3) the person possesses, uses, or threatens the use of a semiautomatic or automatic firearm. The punishment prescribed in this statute is "in addition to the indeterminate term of imprisonment provided for the grade of offense," indicating that this is an enhanced sentencing statute.

Neither Coelho nor the State disputes that Coelho was convicted of a felony and that Coelho had a semiautomatic firearm in his possession. However, the parties disagree as to the meaning of the phrase "while engaged in the commission of the felony." Coelho argues that

[t]he plain language does not suggest that a person convicted of prohibited possession of firearm, a felony, where the person had a semiautomatic firearm in the person's possession, while engaged in the commission of prohibited possession of firearm, be subjected to enhanced sentencing because this reading is illogical. Therefore, the plain language of HRS § 706–660.1(3)(c) reveals that it does not apply to a possessory gun charge without the occurrence of an underlying felony.

The State argues that

this statute is all-inclusive. It applies to every person "convicted of a felony." This could be any felony, like murder, robbery, including conviction for Prohibited Posses-

sion of Firearm under HRS § 134–7(b). . . . Thus, the words "the felony" in the clause "while engaged in the commission of the felony" refer to the same felony for which the person was convicted, and not another felony as [Coelho] would read the statute.

We agree with Coelho's contention that it is illogical the legislature would intend to have enhanced sentencing for possessing a firearm while committing a felony when the felony in question is Prohibited Possession of a Firearm. However, we also agree with the State that the plain language of the statute does not state that for a possessory felony there must be a different underlying felony. Since "there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists." *Rauch,* 94 Hawai'i at 322, 13 P.3d at 331. Therefore, we look to extrinsic aids to determine the legislative intent behind this sentencing statute.

### 2. Legislative History of HRS § 706–660.1

In 1976, through Act 204, the legislature enacted HRS § 706–660.1. The Conference Committee Report stated:

The purpose of this bill is to set a schedule of mandatory sentences for a person convicted of a felony, *where the person had a firearm*[5] *in his possession and threatened its use or used the firearm while engaged in the commission of the felony.*

Your Committee is in agreement that the *steadily increasing use of firearms in the commission of criminal activities presents a severe degree of risk of injury to victims of criminal actions.* At the present time your Committee feels that there is a need to re-examine the methods with which to *discourage the use of firearms* and institute strong penalties for persons convicted of such criminal activities.

Sen. Conf. Comm. Rep. No. 34–76, in 1976 Senate Journal, at 883 (emphasis added; footnote not in original); *see also* Hse. Conf. Comm. Rep. No. 35, in 1976 House Journal,

---

5. The legislature did not add subsection (3) regarding semiautomatic or automatic firearms un-

til 1990. 1990 Haw. Sess. Laws Act 195 § 5 at 423–24.

at 1143, and Hse. Stand. Comm. Rep. No. 492–76, in 1976 House Journal, at 1490. It is apparent that the legislature initially enacted this statute out of concern about criminals *using* firearms *while committing* criminal activities, particularly *the risk of injury* posed to victims of these criminal activities.

In 1987, the legislature amended the section, in relevant part, as follows (brackets designate matter deleted from the statute and underscoring designates new matter added):

[[§ ]706–660.[1]] [1] Sentence of imprisonment for use of a firearm in felony. (a) A person convicted of a felony, where the person had a firearm in his possession [and] *or* threatened its use or used the firearm while engaged in the commission of the felony, *whether the firearm was loaded or not, and whether operable or not,* may *in addition to the indeterminate term of imprisonment provided for the grade of offenses* be sentenced to a mandatory *minimum* term of imprisonment *without possibility of parole or probation* the length of which shall be as follows:

*(1) For murder and attempted murder in the second degree—up to fifteen years;*

[ (1)] *(2)* For a class A felony—up to 10 years; and

[ (2)] *(3)* For a class B felony—up to 5 years[.]; *and*

*(4) For a class C felony—up to 3 years.*

[1] So in original.

1987 Haw. Sess. Laws Act 260, § 1 at 814–15. The Conference Committee Report stated:

The purpose of this bill is to change the conditions under which a mandatory sentence can be imposed *when a person uses or possesses a firearm while committing a felony.*

Section 706–660.1, Hawaii Revised Statutes, presently allows a judge to sentence a person convicted of a felony with a firearm to a mandatory term when a person has the firearm and threatens to use it. This bill as originally drafted would have mandated the court to impose a mandatory term even if the firearm is not used as a threat, is unloaded, and is inoperable.

The Senate Judiciary amended the original bill to allow the judge who sentences a first offender the discretion to review all the circumstances of the crime, and then determine whether a mandatory sentence should be imposed. If, however, a second offense is committed while using or possessing a firearm, the mandatory sentences provided in the bill shall be imposed.

The House Judiciary Committee amended S.B. 847, S.D. 1, to return the statute to its current form by reinserting the "and" between "possession" and "threatened". The House Judiciary Committee stated in House Standing Committee Report No. 1041 that the mere possession of a firearm while committing numerous class C property crimes does not justify mandatory prison terms, even if discretionary.

The House Judiciary Committee also deleted the mandatory prison term for the second firearm offense because it felt the repeat offender statute, section 706–606–5[sic], Hawaii Revised Statutes, adequately addressed the problem of repeat offender.

Your Committee upon further consideration has amended this bill by reinserting the language of S.B. 847, S.D. 1. Your Committee believes that the *provision allowing for judicial discretion in imposing a mandatory term will address the concern that under certain circumstances the mere possession of a firearm may not justify a mandatory prison term.*

Sen. Conf. Comm. Rep. No. 111, in 1987 Senate Journal, at 876 (emphasis added); *see also* Hse. Conf. Comm. Rep. No. 113, in 1987 House Journal, at 1061.

It is important to note the language used by the legislature when describing the purpose of the bill. The legislature did not generally state that it was concerned about the use or possession of firearms, but specifically expressed its concern about "when a person uses or possesses a firearm *while committing a felony.*" Implicit in the language used is that the use/possession of a firearm and the felony being committed are two separate and distinct constructs. More-

over, the conference committee reinserted the language "possession *or* threatened its use" in place of "possession *and* threatened its use" because the committee believed the provision allowing for judicial discretion would address concerns that, in certain situations, the mere possession of a firearm did not justify a mandatory minimum term of imprisonment.

Furthermore, the Senate Judiciary Committee stated in its committee report "that *using or threatening to use a firearm during the commission of a felony,* even if the firearm is unloaded or inoperable, *is a more serious and dangerous crime than simply committing a felony.*" Sen. Stand. Comm. Rep. No. 769, in 1987 Senate Journal, at 1222 (emphasis added); *see also* Hse. Stand. Comm. Rep. No. 1041, in 1987 House Journal, at 1604. Coelho's felony was possessing a firearm when, as a prior convicted felon, he was prohibited from doing so; therefore, he was "simply committing a felony."

In 1990, the legislature amended Section 706–660.1 by adding subsection (3) dealing with semiautomatic and automatic firearms. The Senate Judiciary Committee stated:

> Your Committee has addressed the very real concern within the community regarding the *use by criminals of semi-automatic "assault" weapons.* To that end, your Committee has amended the bill by adding a new subsection to Section 706–660.1, Hawaii Revised Statutes, to provide for severe mandatory minimum sentences for the *use* of these weapons *in the commission of a felony.* ... This bill would require that a first semi-automatic or automatic "firearm felony" offender be sentenced to a mandatory minimum term of up to 20 years. Your Committee believes that these harsh sentences are necessary to keep these weapons out of the hands of criminals.

Sen. Stand. Comm. Rep. No. 3058, in 1990 Senate Journal, at 1243 (emphasis added). Of particular note is the language used by the committee stating their concern about the *use* by criminals of semi-automatic weapons *in the commission of a felony* and the committee's belief that harsh sentences are necessary to keep weapons out of the hands of criminals.

We also look to see if there is any relevant case law, which may lend guidance to the interpretation of the sentencing statute.

### 3. Case Law on HRS § 706–660.1

There are no cases in Hawai'i that directly address the question at hand. However, the Hawai'i Supreme Court has analyzed HRS § 706–660.1 in the context of other felonies.

In *State v. Ambrosio,* 72 Haw. 496, 824 P.2d 107 (1992), Ambrosio pled no contest to kidnapping, possessing a firearm in the commission of a felony, being a felon in possession of a firearm, and possessing a prohibited firearm. *Id.* at 496–97, 824 P.2d at 107–08. The issue in *Ambrosio* was whether the lower court correctly imposed mandatory minimum sentences, pursuant to HRS § 706–660.1(a)(2), for the kidnapping and for the possession/use of a firearm in the commission of the kidnapping. *Id.* at 497, 824 P.2d at 108.

In arriving at its conclusion, the Hawai'i Supreme Court stated:

> The legislature has chosen to make the use of a firearm in the commission of a felony the basis for enhanced sentencing for that felony, and it has also chosen to make such use a separate felony, but it clearly has not chosen to impose two mandatory minimum sentences for one use of a gun.

*Id.* at 497–98, 824 P.2d at 108. The supreme court held that the lower court properly applied HRS § 706–660.1(a)(2) to the kidnapping offense, but improperly applied it to the possession of a firearm in the commission of the kidnapping offense. *Id.* at 498, 824 P.2d at 108.

The supreme court also analyzed a similar issue in *State v. Vellina,* 106 Hawai'i 441, 106 P.3d 364 (2005). Vellina pled no contest to first degree burglary, second degree theft, and two counts of first degree theft (theft of a rifle and a semi-automatic rifle). *Id.* at 444, 106 P.3d at 367. The State filed a motion for imposition of mandatory minimum terms of imprisonment pursuant to HRS § 706–660.1(1)(c) and (3)(c) for the first de-

gree theft counts. *Id.* The circuit court sentenced Vellina to an indeterminate ten-year maximum term of imprisonment, subject to a five-year mandatory minimum term, on each of the first degree theft charges. *Id.* at 445–46, 106 P.3d at 368–69.

Vellina argued the circuit court erred by imposing those mandatory minimum terms of imprisonment. *Id.* at 447, 106 P.3d at 370. Discussing the issue, the Hawai'i Supreme Court stated:

> For the circuit court to have imposed a legitimate mandatory minimum term of imprisonment, Vellina must have (1) been convicted of a felony (2) where he had a firearm or a semi-automatic firearm (a) in his possession (b) or used (c) or threatened its use while engaged in the commission of the felony. Nevertheless, Vellina was convicted of two counts of first-degree theft of a firearm, the felonious conduct being the theft of the firearms themselves. Accordingly, Vellina did not possess, use, or threaten the use of a firearm while engaged in the *commission* of the felonies of theft of a firearm and a semi-automatic firearm. Vellina's theft of a firearm *was* the entire felony; in other words, there was no underlying felony that Vellina committed while possessing or using a firearm. As such, Vellina's conduct falls outside of the ambit of HRS § 706–660.1.

*Id.* at 447–48, 106 P.3d at 370–71 (emphasis in original). The court further stated, "[i]n essence, convicting Vellina of first-degree theft, pursuant to HRS § 708–830.5(1)(b), *and* sentencing him to mandatory minimum terms of imprisonment, pursuant to HRS §§ 706–660.1(1)(c) and (3)(c), *punished him twice for the theft of the same firearms* [.]" *Id.* at 448, 106 P.3d at 371 (some emphasis in original; some emphasis added). The supreme court held that the circuit court had erred in sentencing Vellina to mandatory minimum terms of imprisonment pursuant to HRS § 706–660.1(1)(c) and (3)(c). *Id.* at 449, 106 P.3d at 372.

Similarly, Coelho was convicted of being a felon in possession of a firearm; the felonious conduct was the possession of the firearm itself. There was no underlying felony that Coelho committed while possessing or using a firearm. Convicting Coelho of being a felon in possession of a firearm pursuant to HRS § 134–7(b) and sentencing him to a mandatory minimum term of imprisonment pursuant to HRS § 706–660.1(3)(c) essentially punished Coelho twice for a single possession of a firearm.

As the Hawai'i Supreme Court stated in *Mahoe*, "[a] rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable." 89 Hawai'i at 288, 972 P.2d at 291 (quoting *Bautista*, 86 Hawai'i at 209, 948 P.2d at 1050). A rational, sensible and practicable interpretation of HRS § 706–660.1 is that the legislature did not intend its application for felonies where the *entirety* of the felonious conduct is the use or possession of a firearm. To interpret the statute otherwise would be unreasonable since it would punish a person twice for a single act.

The circuit court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment" of Coelho. *Rauch*, 94 Hawai'i at 322, 13 P.3d at 331. Accordingly, we hold the circuit court erred in sentencing Coelho to ten years of incarceration with a mandatory minimum term of ten years pursuant to HRS § 706–660.1(3)(c).

### III.

Therefore, we vacate the Amended Judgment filed on May 6, 2003 in the Circuit Court of the Second Circuit and remand this case for resentencing.